MATTHEWS *v.* WILLIAMSON.

Opinion delivered April 5, 1920.

1. JUDGMENT — CONCLUSIVENESS ON COLLATERAL ATTACK.—A decree foreclosing the State's lien for purchase money of internal improvement land which recites that the defendants were duly notified of the pendency of the suit is not open to collateral attack

upon the ground that, though service was by publication of a warning order, the proof of publication of the warning order failed to show that it was published once each week for four consecutive weeks, as required by the statute in force at that time.

2. PUBLIC LANDS—PAYMENT IN LEVEE BONDS.—Even though a payment for State land in levee bonds was not a valid payment, this fact did not preclude the vesting of title in the purchaser, the State having a lien on the land for the purchase money.

3. PUBLIC LANDS—INVALID PAYMENT—CURING ACT.—Though a payment of the purchase money of the State's land was void because made in levee bonds, the purchaser's grantee was entitled to have her title quieted under General Acts 1919, page 174, confirming such sales and quieting the title to the land sold for levee bonds.

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; affirmed.

### STATEMENT OF FACTS.

Mrs. Helen Howard Williamson brought this suit in equity against Justin Matthews to quiet the title to a certain section of land in Miller County, Arkansas. The land in question was originally internal improvement land. On December 14, 1855, it was sold by the State of Arkansas to S. H. Hempstead and Benjamin P. Jett, who gave their note for the purchase price in the sum of $800. On June 7, 1857, they made a payment of $130 and on October 6, 1859, they made another payment of $100. The balance of the purchase price was not paid, and suit was brought by the State of Arkansas to foreclose the lien against the land. The return of the sheriff of Lafayette County on July 23, 1873, certifies that Samuel H. Hempstead could not be found in that county. The land was then located in Lafayette County, and it became a part of Miller County when it was formed in 1874. No reference is made in the sheriff's return as to Benjamin P. Jett. The record of the Pulaski Chancery Court shows that a warning order was published which recites that the State had commenced suit on the notes of Samuel H. Hempstead and Benjamin P. Jett, dated in December, 1855, for $800, and that the State asked to have the vendor's lien enforced against the section in question, which ·

is particularly described, and that Samuel H. Hempstead and Benjamin P. Jett were warned to defend the suit on or before the 20th day of October, 1873, which is the first day of the October term of the chancery court.

The secretary of the Arkansas Republican, a newspaper published at Little Rock, Ark., swears that the warning order was published four times in that paper, the first insertion of which was on the 6th of August, and the last on the 20th of August, 1873.

A decree in favor of the State was entered of record on December 2, 1873. The decree recites that the defendants wholly failed to plead, answer or demur within the time prescribed by law. On the 10th day of April, 1874, on motion of the Attorney General of the State, this decree was set aside, and a *nunc pro tunc* decree in favor of the State was entered of record. This decree recites that the defendants had been duly notified of the pendency of the suit against them as required by law. Judgment was rendered in favor of the State against Samuel H. Hempstead and Benjamin P. Jett for the balance of the purchase money due the State. It was decreed that the judgment be a lien on the lands, and that the lands be sold to satisfy the judgment by a commissioner appointed by the court for that purpose. The land, after being duly advertised, was sold pursuant to the decree to M. A. Wolfe for $1.25 per acre, which was paid in Arkansas levee bonds. On November 2, 1874, this sale was in all things approved and confirmed by the chancery court of Pulaski County. Wolfe conveyed the land to the Louisville Banking Company, and that company conveyed the land to the plaintiff, Helen Howard Williamson, on January 1, 1890. The land is wild and unimproved, and the plaintiff and her predecessors in title have paid the taxes on it since the date of its purchase from the State of Arkansas, being for a period of forty-four consecutive years. The amount of State, county and school taxes amounts to $886.71. Since the year 1911 various special assessments for bridge, highway and levee improvements have been assessed against the land. The

plaintiff has paid the sum of $2,244.96 for general and special taxes.

The defendant, Justin Matthews, claims the land by virtue of a deed from the Commissioner of State Lands, executed to him on the 13th day of September, 1918.

The chancellor found the issues in favor of the plaintiff, and it was decreed that the plaintiff, Helen Howard Williamson, was the owner in fee simple of the land in controversy, and that the defendant, Justin Matthews, had no right or claim of title thereto. It was further decreed that the title to said land be quieted in the plaintiff against the defendant. The defendant has appealed.

*James D. Head,* for appellant.

1. The plaintiff (Williamson) has no title, and appellant Matthews is the owner of the land in controversy. The title was in the State (Gantt's Digest, section 3983) until Matthews purchased it. The Pulaski chancery decree in *State* v. *Hempstead and Jett* was a nullity, as it was rendered upon constructive service alone and there was a failure to comply with the law. Gantt's Digest, §§ 3994-8. The clerk of the chancery court of Pulaski County never did enter of record a warning order, as required by section 3994 of Gantt's Digest. This was a special proceeding based on a statute in contravention of common law, and the law as to constructive service was not followed and the decree was void. 30 Ark. 719; 52 *Id.* 312; 94 *Id.* 338; 51 *Id.* 34; 60 *Id.* 369; 101 *Id.* 390; 76 *Id.* 146; 55 *Id.* 30; 74 *Id.* 81; 94 *Id.* 126; 15 R. C. L., § 375, pp. 897-8; 97 U. S. 444; 110 *Id.* 701; 96 Pac. 1005; 1 Black on Judgments (ed. 1891), § 277; 58 Ark. 181.

2. The decree ordered the lands sold for *cash,* and the sale was for Arkansas levee bonds, and the sale and confirmation were void. 37 Ark. 418; 31 *Id.* 272; Rorer on Judicial Sales, §§ 28-42; 8 How. (U. S.), 495. The deed to Wolf was void on its face and no rights can be built or based upon it. 39 Ark. 580; 81 *Id.* 440; Cooley, Const. Law (4 ed.), 227. The sale and confirmation

were absolutely void *supra,* and Wolf acquired no title whatever.

3. Williamson was not an innocent purchaser, as the judgment was void. 26 Ark. 228; 97 *Id.* 397; 32 Minn. 313. It can avail plaintiff nothing to show that the land was the property of the Miller Levee District, as under act 69, Acts 1911, the lands were exempt from taxes. The decree in State against Hempstead and Jett was void and the purchaser acquired nothing. 81 Ark. 440; 58 *Id.* 181; 211 S. W. 552.

4. The State is not estopped from claiming the land. 39 Ark. 580; 42 *Id.* 118; 40 *Id.* 251; 93 *Id.* 490; 57 *Id.* 474. The lands were not subject to taxation, being property of the State. 95 Ark. 65.

5. After the purchase by Hempstead and Jett the lands were subject to taxation. Gantt's Digest, § 3925; Kirby's Digest, § 1914. Payment of taxes for seven years did not constitute adverse possession. 57 Ark. 474; 95 *Id.* 65. The statute of limitations does not run against the State. 81 Ark. 444; 93 *Id.* 490.

6. Matthews acquired title by a deed from the State Land Commissioner, and all presumptions are in its favor, as he had authority to execute the deed, as the title remained in the State until the lands were paid for and the deed carried what title the State had. 31 Ark. 125; 99 *Id.* 154; 1 Warvelle on Vendors, § 189; 42 Ill. 198; 19 Iowa 544. Matthews succeeded to all the rights of the State. 72 Ark. 359; 2 Warvelle, Vendors, §§ 733-735; 52 Ark. 381; 16 *Id.* 122; 31 *Id.* 140; 99 *Id.* 154; 94 *Id.* 338, and he should recover (135 Ark. 354; 96 *Id.* 42), as he succeeded to all the rights of the State.

*Henry Moore, Jr.,* for appellee.

Appellant alleges a *prima facie* title in himself by a deed from the State and that the Pulaski chancery decree is void because no legal service was had on defendants and the lands were paid for in levee bonds. The sale made pursuant to an action brought under sections 3991 to 4006 of Gantt's Digest, to foreclose notes out-

standing for internal improvement lands purchased from the State. The sheriff returned the summons, stating that Hempstead could not be found, and there is nothing in the record to show whether Jett was in the county or served or not, thereupon the clerk entered the order required by Gantt's Digest, section 3994, and defendant was duly warned and the order published according to law and the record recites that defendants had been duly *notified of the pendency of the suit as required by law.* This is *conclusive.* Gantt's Digest, § 4006; 57 Ark. 54. At the time the payment was made in levee bonds was legal, but later the bonds were held illegal. 33 Ark. 17; 39 *Id.* 580; 43 *Id.* 180. The State has had no title since the sale to Hempstead and Jett. 66 Ark. 52; 112 Ark. 32; 97 *Id.* 402; 84 *Id.* 160.

The title of plaintiff (Williamson) is good, as the sale and confirmation in the chancery court was regular and valid, and only the State could raise the objection that the lands were paid for in levee bonds through the courts and she never did; the plaintiff is an innocent purchaser for a valuable consideration; both parties claim through the State, and plaintiff has the superior title and must prevail. 208 S. W. 422; Kirby's Digest, §§ 4851-2. If the sale in the chancery court and the deed were irregular, yet plaintiff's title has been quieted by section 4852, Kirby's Digest. The decision of the chancellor is right and should be upheld unless clearly against the preponderance of the evidence. 91 Ark. 280-299; 102 *Id.* 53; 131 *Id.* 84. Matthews has paid taxes with full knowledge of plaintiff's claim and had not even color of title. The decree is right and should be affirmed. 140 U. S. 646; 114 Ark. 62; 135 *Id.* 236.

*Cockrill & Armistead, amici curiae.*

The State sold these lands on a credit, under Gantt's Digest, sections 3920-2932. That constituted a sale by bond for title; in effect, a deed with a mortgage back for the purchase price. 39 Ark. 580; 13 *Id.* 533; 14 *Id.* 628;

29 *Id.* 357; 100 *Id.* 543; 66 *Id.* 167.  If the decree of foreclosure is void, the bonds are still outstanding, and the State can foreclose them unless she has acquitted the debtors as she has done by act No. 226, Acts 1919. The failure of the sale on decree did not reinvest the title in the State.  Gantt's Digest, § 3897; Kirby & Castle's Digest, § 656 *et seq.*; 57 Ark. 49; 94 *Id.* 338.  But if the State had any rights, they did not pass to appellant under the commissioner's deed.  If the decree and sale were void, the State still had a suit pending to foreclose its lien.  The State had no title when the certificate was issued, at most a lien under process of foreclosure.  66 Ark. 48.  Its deed passed nothing.  205 S. W. 702; 100 Ark. 543.

HART, J. (after stating the facts).  It is the contention of counsel for the defendant that the decree rendered by the Pulaski Chancery Court in 1873 in the case of *State* v. *Hempstead and Jett,* seeking to foreclose the lien of the State against them for the unpaid purchase money, is absolutely void.  The statute authorizing proceedings by the State for the foreclosure of land where the land was sold on a credit may be found in Gantt's Digest, sections 3994-3998.

Section 3994 of Gantt's Digest provides that if the return upon a process directed to the county in which the land is located shows that the defendant is not found in such county, or upon the affidavit of some credible person that the defendant is a nonresident of the State, the clerk of the chancery court, upon the application of the Attorney General, shall make and enter on the record an order which shall contain the title of the suit, the date and amount of the note sued on, and a description of the land upon which the lien is sought to be enforced and warn the defendant to appear and make defense thereto on the first day of the next term of such court that commences more than sixty days from the date of such order.

Section 3995 provides that the publication of such warning order once in each week for four consecutive

weeks in an authorized newspaper published at the seat of government, shall be equivalent to personal service.

It is the contention of counsel for the defendant that the decree of the Pulaski Chancery Court is void because the record shows that the only service had was by publication and the return of the sheriff only shows that Hempstead was not found in Lafayette County and does not show that Jett was not found there. Counsel also contends that the decree is void because the proof of publication of the warning order fails to show that it was published once each week for four consecutive weeks as required by the statute.

The contention of counsel is not sound and is contrary to the previous decisions of this court bearing on the question.

In the case of *McLain* v. *Duncan*, 57 Ark. 49, which was a proceeding by the State to foreclose its lien against the purchaser of internal improvement lands, it was held that a decree in a proceeding by constructive service which recites that notice was given as required by the statute, without specifying how the notice was given, is valid against collateral attack. The court said that the law does not require the evidence of publication to be made a part of the record, either by entering it at large on the record, or by filing it. The publication in that case was required to be made in two counties, and the record contained an affidavit showing publication in one county only. The court held that the mere absence of an affidavit as to the latter publication could not be allowed to overcome the presumption, arising from the recitals of the decree, that the court's finding as to the notice was made upon sufficient competent evidence.

Again, in *Clay* v. *Bilby*, 72 Ark. 101, the court said that, in case of service by publication, there being no statute forbidding it, parol evidence might be received to prove publication of the notice; and that, if the decree did not exclude the conclusion, the presumption was that sufficient and competent evidence was before the court to sustain its findings as to the publication of notice.

Hence the court held that a decree in an overdue tax proceeding was not void on collateral attack, because the affidavit of publication of the warning order failed to state that the affiant was publisher of the paper, that it was printed in the county named in the affidavit, and that it had a *bona fide* circulation therein for one month before the date of its first publication.

In *Whitford* v. *Whitford,* 100 Ark. 63, it was held that, in case of service of process by publication, if no statute forbids, parol evidence may be received to prove publication of the warning order.

The court further held that, if a decree does not exclude the conclusion, it will be presumed that sufficient and competent evidence was before the court to sustain a finding as to the publication of a warning order.

The court further held that while the affidavit of the publisher shall be sufficient evidence of the publication of the warning order, it is not the exclusive evidence of that fact.

Again in *Taylor* v. *King,* 135 Ark. 43, in discussing the validity of a decree in a foreclosure suit to enforce a vendor's lien for the purchase money against a tract of land, the court said that, the decree having recited that the parties were duly served with summons, the allegations and proof of the defendants to the effect that summons was not served upon them as required by law could not prevail against the decree in a collateral attack.

The amended decree in the foreclosure suit of the *State* v. *Hempstead and Jett* in the Pulaski Chancery Court in 1873, recites that the defendants had been duly notified of the pendency of the suit against them as required by law and had failed to answer, plead or demur. The present case is a collateral attack on that decree, and the recital of the decree in that case that the defendants were notified of the pendency of the suit against them, as required by law, is conclusive of that fact in the present case. The presumption is that the court heard sufficient evidence upon which to base its findings. It is not

a case where the finding of the decree is contradicted by the face of the record.

Notwithstanding that the affidavit of the secretary of the newspaper tends to contradict the recitals of the decree, yet it is not sufficient for that purpose. The reason is that, while it is evidence of the publication of the warning order, it is not the exclusive evidence of that fact, and the presumption is that the court heard other evidence which sustained the recitals in the decree.

It is also true that the warning order in the record shows that the service was by publication and that the return of the sheriff fails to show that Jett was not found in Lafayette County. It may be, however, that the court heard the testimony of the sheriff and that he testified that Jett was not found by him in Lafayette County.

The statute also provides that the warning order may be issued upon the affidavit of some credible person. It may be that the court had such testimony before it. This holding is not opposed to the ruling in *Winn* v. *Campbell*, 94 Ark. 338. In that case there were various record entries from the filing of the bill to the last entry confirming the report of the commissioners, and these entries clearly showed that the land against which the foreclosure proceedings were instituted were described as situated in Columbia County, Arkansas. The court said that it could not indulge any presumption in the face of these record entries that the trial court heard evidence and found that the lands were in fact situated in Ouachita County, and that the publication was also made in that county.

In the case at bar there are no record entries tending to contradict the recitals of the decree, and, as above stated, the evidence pointed out by counsel for the defendant was not the only evidence the court might have heard upon which to base the finding in the decree that the defendants were duly notified of the pendency of the suit as required by law.

It is also contended by counsel for the defendant that the decree in the case of *State* v. *Hempstead and Jett*

in the Pulaski Chancery Court in 1873 is void because the purchase price was paid in levee bonds. They rely on section 3983 of Gantt's Digest, which was in force at the time. This section is now section 4913 of Kirby's Digest. The section provides, in part, that all lands heretofore sold on a credit shall remain the property of the State until the full payment of the purchase money. This does not mean that the title to the land is retained in the State until paid for. The State sold the land to Wolfe, and the sale was confirmed in him. It is true he paid the purchase price in levee bonds, and that under our previous decisions this amounted to no payment at all, because the payment was made in an unlawful medium. The State, however, has sold the land to Wolfe and has only a lien for the purchase money. There was a contract between the State and Wolfe for the purchase of the land by him from the State. There has been no decree of the court, nor any action of the parties rescinding that contract. Therefore, it is still in force. A deed was executed to Wolfe and the land was placed upon the tax books. Wolfe became the equitable owner of the land and had the right to pay it out. Hence the State only had the right to foreclose its lien for the unpaid purchase money. *Woodward* v. *Campbell, Commissioner, etc.,* 39 Ark. 580, and *Cochran* v. *Cobb,* 43 Ark. 180.

In the latter case in discussing this question the court said:

"The rights of the State and of purchasers who have paid for lands in levee bonds are these: Where the contract has been executed, that is to say, where a deed has been made and the lands have passed into the hands of innocent third parties who have paid value for it, the State is estopped by its own grant to resort to the land (*Fletcher* v. *Peck,* 6 Cranch, 87), but may maintain an action against its grantee for the purchase price. But where the land, though patented, is in him, except by purchase for a valuable consideration without notice that the entry money is unpaid; and in all cases where the

but the purchaser or his assigns holds a certificate of entry, the State may treat the supposed payment as a nullity and may subject the land to the purchase debt.''

Hence the court properly held that Matthews had no title or interest in the land. By Act 226, the Legislature of 1919 ratified and confirmed the sale of land formerly owned by the State in which the sale was conducted pursuant to a decree of the Pulaski Chancery Court in favor of the State condemning the lands for sale to pay the unpaid purchase price, and in which the sales were made for a price payable in Arkansas levee bonds. The act authorizes the Commissioner of State Lands to execute deeds to the owner and quiets all the right and title of the State in the land. General Acts of 1919, page 174. This act is valid. Under it the title to the lands became vested in the plaintiff. Hence she had a right to have her title quieted as against the defendant.

It follows that the decree will be affirmed.