OWEN *v.* UNION CENTRAL LIFE INSURANCE COMPANY.

4-4073

Opinion delivered December 23, 1935.

*R. V. Wheeler, Kenneth Rayner* and *Frank Berry,* for appellants.

*Herbert Gannaway, A. B. Shafer* and *E. C. Gathings,* for appellees.

HUMPHREYS, J. A petition was filed by appellants in the chancery court of Crittenden County within two years from the date of a foreclosure decree in said court, wherein appellee Union Central Life Insurance Company was plaintiff, and appellants were defendants, having been constructively served in the foreclosure proceeding.

In the petition it was alleged that appellants were served constructively as though nonresidents; whereas they were citizens of the State of Arkansas and should

have been personally served with summons. And also alleged that the purpose of serving them constructively was a part of a conspiracy to foreclose the mortgage without their knowing anything about it, so that they might purchase it at the foreclosure sale for an inadequate consideration, and also alleged that, in furtherance of such conspiracy, they advertised the lands under an erroneous description and sold it at a different place than that specified in the decree and notice, and had purchased it at a grossly inadequate price, having induced prospective purchasers not to attend the sale. And also that, although appellees had promised to give appellants an opportunity to buy the property back, the Union Central Life Insurance Company, the purchaser at the sale, pursuant to the conspiracy entered into between it, Oliver and others, conveyed 580 acres, constituting Owen's home place, to Mrs. A. W. Oliver.

Appellees filed separate answers to the petition for a new trial denying the material allegations contained in the petition.

The cause was heard upon the pleadings and evidence introduced by appellees, resulting in a dismissal of appellants' petition, from which is this appeal.

A summary of the facts revealed by the evidence is, in substance, as follows:

In February, 1929, the Union Central Life Insurance Company loaned A. B. Owen $21,000, evidenced by a series of amortized notes, twenty in number, the first being for $905.90, and the remaining for $1,095.88 each, payable November 1, 1929, and annually thereafter, said notes covering both principal and interest and secured by a trust deed on some six hundred thirty-three and one-third acres situated partly in St. Francis County and mainly in Crittenden County, Arkansas. The mortgage contained an accelerating clause in case of default in the payment of any note at maturity. In 1931, Owen defaulted upon the indebtedness and also failed to pay the general and special taxes. At that time he was indebted to F. G. Barton Cotton Company in a large amount secured by a second mortgage upon the lands. The second mort-

gagee, wishing to save the second mortgage if possible, but also as agent for Owen, began negotiations with the Union Central. These continued throughout 1932, both before and after the foreclosure suit was instituted. At no time did Mr. Frank Barton, who conducted these negotiations for the F. G. Barton Cotton Company, offer to pay the Union Central Life Insurance Company the total amount of the delinquencies. Mr. Barton made an offer in the spring of 1932 to pay a portion of the delinquencies, which was refused; and later, conditions becoming gradually worse during 1932, the insurance company, through its representative, Mr. Richmond, agreed to accept the proposition previously refused, but the condition of Owen's crop and general conditions at the time were such that Mr. Barton refused to renew the offer but, on the other hand, made an offer of a less amount, or counter-proposition, which was refused. Mr. Barton communicated to Owen the result and failure of these negotiations. On July 15, 1932, the Union Central Life Insurance Company filed its foreclosure suit, showing that at that time Owen was delinquent in the sum of $1,905.88, due November 1, 1931, and in addition had failed to pay the levee, drainage, road and State and county taxes, which were past due and delinquent, and that there was due the insurance company, exclusive of taxes, the sum of $19,883.09 with interest from November 1, 1931. On October 17, 1932, the chancellor entered a decree of foreclosure for $21,175.49, the amount of the indebtedness with interest to that date exclusive of taxes. Two or three days before the decree of foreclosure was rendered, A. B. Owen received information of the pendency of the suit and employed A. H. Murray, a regularly practicing attorney, to represent him in this suit, and Murray was present in court when the decree of foreclosure was requested and when it was rendered, and had an opportunity to examine the decree and was furnished with a copy, but did not ask for time within which to answer or make any defense and made no objection to the entry of the decree. Owen and Murray were not able to get any one willing to put up the necessary money to stop the foreclosure, although efforts were made with Ralph

May, Shannon Brothers, Eugene Woods, and others in addition to the second mortgagee. The notice of the commissioner's sale was published pursuant to the decree of foreclosure. A slight misdescription of one of the calls of the land was made in the notice. The commissioner's report of sale was filed, showing that the property was sold, at the time and place designated in the decree, for $19,885 to the mortgagee, the Union Central Life Insurance Company. The sale was approved and confirmed by the chancellor in the presence of Owen's attorney on December 20, 1932. No objection was made by said attorney to the sale or confirmation thereof. The court ordered the commissioner to execute a deed to said lands described in the mortgage to the Union Central Life Insurance Company, which was done, and which deed was subsequently approved by the chancellor and duly recorded. Owen testified that he went to the place of the sale on the advertised date thereof and received information that the sale had been made in the clerk's office, instead of being made publicly at the courthouse door, and that for some reason Eugene Woods, who had promised to buy it in for him, did not appear and do so. The Union Central Life Insurance Company conveyed most of the land to Mrs. A. W. Oliver. A. W. Oliver purchased forty acres of the land from Len Turley, who acquired title thereto under a tax deed. The Union Central Life Insurance Company conveyed the balance of the land to W. B. Rhodes. Thereafter, appellants surrendered possession of the lands purchased by Mrs. A. W. Oliver to her, who immediately made improvements thereon, and who has continued to reside thereon and improve same. In 1930 A. B. Owen bought a home in Memphis, and moved his wife and children to that city and visited them week-ends. The children attended school, and his wife became a registered voter in Memphis. He continued to maintain a home in Memphis for them until May or June, 1933, at which time the residence was sold under mortgage. He was maintaining a home in Memphis when the Crittenden County property involved in this suit was foreclosed. At no time, either before or after the foreclosure of these lands, did A. B.

Owen or any one for him ever tender in money the amount of the delinquencies. or the total indebtedness to the Union Central Life Insurance Company, but made propositions to get up money to pay part of the delinquencies by way of compromise and settlement. The most that Owen claims is that, if he had been given more time, he had friends who would have helped him if the delinquencies did not figure up more than they were willing to advance for him. It is not made certain by the evidence whether the amount they were willing to advance would take care of the delinquencies, and not made certain whether these friends were dissuaded or in any way prevented from helping him out of his financial troubles. The facts reflect that, at the time of the foreclosure and sale of the lands involved herein, they were intrinsically of greater value than the amount paid at the sale for them, but it does not reflect to a certainty that their market value was materially greater. The evidence rather reflects that the lands had no market value at that time. The evidence reflects that the entire indebtedness was past due, and that A. B. Owens owed the entire amount claimed.

The evidence is insufficient to show that in foreclosing the mortgage appellees entered into a conspiracy to defraud A. B. Owen and acquire his property for a grossly inadequate or inadequate price. In fact, long after the foreclosure and voluntary surrender of the possession of the lands to appellees, A. B. Owen wrote the following letter to the representative of the insurance company:

"Proctor, Arkansas, July 15, 1933.

"Mr. Jerome Clark, Vice-President, Union Central Life Insurance Co., Cincinnati, Ohio.

"Dear Sir:

"As an official of the Union Central Life Insurance Company, in charge of such matters, I write you in my behalf.

"I am a colored farmer. I owed your company $21,-000. I was unable to pay it, due to the depression. In January, 1933, you foreclosed the property. I was un-

able to buy it in, although I thought I had made arrangements with a cotton merchant to buy it for me, but he did not do so. This meant that you bought in the property, and, naturally wishing to dispose of it as soon as you bought it in, your local agent sold part of it to a Mr. Rhodes at Marion, Arkansas. This was an absolute sale, and I am not seeking to buy any of the land sold to him. However, there was a remaining 580 acres which was bargained for sale to a Mr. A. F. Oliver, and he has not complied, as I understand it, with his contract of sale. Therefore a default exists, and it is within your power and right, as I understand it, to now cancel this contract of sale for his failure to comply with the terms of said contract of sale. Thereupon, you may resell this property to me. I am anxious to buy it again. It was my property and my home for many years, and I know that you are ready and willing to help me.

"I have talked to your local agent here, and he appears very reluctant to permit me to get my property back, seemingly wishing to show leniency and grant an extension to Mr. Oliver, who entered into the contract of sale.

"I should like very much to have you advise me fully about this matter, and I assure you that it will be appreciated.

"Yours very truly,
"(Signed) Abner B. Owen,
"Proctor, Arkansas.

"P. S.—A description of this land is attached on a separate sheet."

As we view the whole record, appellants are without any remedy at this time. They contend and argue that they have an absolute right to a new trial, not only in the original foreclosure proceedings and decree, but in the subsequent proceedings and confirmation decree under § 6266 of Crawford & Moses' Digest, which is as follows:

"Where a judgment has been rendered against a defendant or defendants constructively summoned and who did not appear, such defendants or any one or more of them may at any time within two years, and not there-

after, after the rendition of the judgment appear in open court and move to have the action retried; and, security for the costs being given, such defendant or defendants shall be permitted to make defense, and thereupon the action shall be tried anew as to such defendant or defendants as if there had been no judgment, and upon the new trial the court may confirm, modify or set aside the former judgment and may order the plaintiff in the action to restore to any such defendant or defendants any money of such defendant or defendants paid to them under such judgment, or any property of such defendants obtained by the plaintiff under it and yet remaining in his possession and pay to the defendant the value of any property which may have been taken under an attachment in the action or under the judgment and not restored; provided the provisions of this section shall not apply to judgments granting a divorce except so far as relates to alimony.''

Our construction of this statute is that it has application to the proceedings up to and including the original judgment of foreclosure, and has no application to the proceedings subsequent to the original judgment. This was the effect of the holding in the case of *Gleason* v. *Boone,* 123 Ark. 523, 185 S. W. 1093. The second syllabus reads as follows:

''Where the suit in which the defendant was constructively served was for the foreclosure of a mortgage, and, pursuant to such foreclosure, the land was sold, the sale will not be set aside, upon the filing of a petition by the defendant for a new trial under Kirby's Digest, § 6259 (Crawford & Moses' Digest, § 6266).''

As stated above, the evidence in this case reflects that A. B. Owen owed the debt and that he was in default in the payment of the indebtedness when the decree of foreclosure was rendered. He had no defense at the rendition of the original decree and has none under the evidence adduced on the trial in this cause. In other words, he has no absolute right to a new trial under said section touching the sale and confirmation thereof. His remedy and only remedy to set aside the sale and confirmation thereof was by appeal, and the time has expired

in which to take an appeal from the decree of confirmation.

This is perhaps a case where the owner of property lost it on account of the depression. That is what he said in the letter quoted above. The courts cannot mold remedies to meet situations of this kind, especially where such remedies would impair the obligation of contracts and enforcement thereof. It may be said in passing, however, that appellants did nothing in the instant case to help themselves when they could have done so. They knew of the sale, how it was advertised, where it actually occurred, and had an attorney present when it was confirmed, and made no objection to any of the proceedings after the rendition of the original judgment. They are really to blame for the situation in which they now find themselves by failing to attack the sale at the proper time.

No error appearing, the judgment is affirmed.