WRIGHT *v.* KAUFMAN.

4-4218

Opinion delivered March 9, 1936.

A. A. McDonald, for appellants.

Hill, Fitzhugh & Brizzolara, for appellee.

BAKER, J. The appellants here were plaintiffs in the trial court. They brought this suit, attempting to set aside a decree of foreclosure and sale of real estate nearly or about four years after the confirmation of the sale. The complaint alleged that they were owners of lots 9 and 10, block 12, of Foltz Addition to the city of Fort Smith. The first allegation was that the advertisement for the sale of the property was published in the *Saturday City Item,* a weekly newspaper, and that said newspaper did not have a *bona fide* circulation as contemplated by law.

They alleged next that the judgment or decree was procured by fraud practiced by the defendant upon the court and plaintiffs, and that they were prevented from making a defense by fraudulent conduct of the defendant Kaufman. They pleaded further that on the 25th of April, 1925, they conveyed their property by deed to Kaufman as security for money he was to advance to them, or pay for them to others in the sum of $1,986.67, the money to be repaid within five years.

They say that they are colored people, ignorant of business affairs, but, having confidence in Kaufman, they

relied altogether upon him in the preparation of all conveyances and contracts which they signed.

They say that during the period of five years, for which the contract was to run, they paid all State, county, water, bridge and other taxes assessed and charged against the property; that they made their last payment on October 25, 1930, and that the payment at that time was made with the distinct understanding on their part, and on the representations of Kaufman, that he would not foreclose on the property, but would rent the house and collect the rents and apply same on the balance owing on the loan.

At the time they procured this money they were living in Fort Smith, but on or about the first day of June, 1928, they moved to Los Angeles, California, and thereafter carried on all negotiations by mail. They pleaded that on February 1, 1931, they received a letter from C. W. Knott, dated January 27, 1931, notifying them that suit had been brought by Kaufman to foreclose the mortgage he held. They thought there was some mistake and wrote to an attorney at Fort Smith asking him to investigate the matter for them, but, failing to receive a reply, they were advised by an attorney in Los Angeles, California, that there was probably some mistake and paid it no more attention until they were notified, on April 13, 1931, by a telegram from Kaufman, which read: "Purchased your property at foreclosure sale. What shall I do with the furniture stored in the house? Please advise at once. Henry Kaufman."

They then had some one write the clerk at Fort Smith, and found that judgment had been rendered for $1,364.03. Failing in their efforts to employ attorneys, plaintiff, Josie Wright, returned to Fort Smith about September 10, 1933, more than two years after the sale, and later her husband, Dave Wright, returned to Fort Smith on February 5, 1935.

They further say that they had a "good, meritorious defense and a valid one, and were prevented from making same by the false and fraudulent misrepresentations of the defendant, as more fully appears from said letters of defendant which are too voluminous to include herein."

In their further pleading they allege that the amount of the indebtedness was $779.64; and pleaded that the judgment was for $589.39 more than Kaufman was entitled to receive. The commissioner's deed to Kaufman was made April 16, 1931. They also insist that the delay in bringing this suit does not in any manner work to the disadvantage of the defendant, and that they have not been guilty of laches as they brought the suit as soon as it was possible for them to do so. They pray that they be allowed to prove their defense to the suit; that said sale be declared void, set aside and cancelled, and that an accounting be ordered between the parties.

They amended their complaint and pleaded that certain repairs were made upon the house in order that it might be rented; that they made these expenditures under a belief that there would be no immediate foreclosure, and that Kaufman would continue to collect rents; that he had written them showing that he had deposited in the bank $35.23; that he claimed to have paid back taxes, sewer and water, in the amount of $88.40, but he had not paid these items, and that after the foreclosure upon the property he had withdrawn from the joint account of Wright and Kaufman, made up of rents, $75; that this was done after the sale was confirmed. Attached is a statement showing the amount paid out by Kaufman, and they also made an exhibit of a letter written by Kaufman and a statement which he enclosed in the letter, said letter being dated November 3, 1930. He advised in that letter the collection of some money, showing he had received $180, and that he had paid out $144.77, and that the balance he was presumed to have deposited in the bank with such rents as may have been collected.

The defendants filed a demurrer to this complaint. The court sustained the demurrer and dismissed the complaint. From that decree is this appeal.

Whatever the merit this complaint may apparently have upon a casual reading, an examination disclosed very little substance therein.

We desire to suggest in the beginning of this discussion that those who attack judgments and decrees of the courts and seek to set them aside must do so in accord-

ance with some of the well recognized principles of law as declared by statute or set forth by the decisions of the courts. If this were not true, the verity of judgments and decrees of courts would perish. No litigation could ever be ended. The passing years would suggest to some astute counsel some new method of attack.

These two old negroes had been away from Fort Smith for about three years when this suit was filed. Service was had by warning order. They plead that the attorney *ad litem* had given them notice of the pendency of the suit. When they failed to hear from an attorney at Fort Smith to whom they had written, they felt secure in their belief that there was some mistake and paid no more attention to the matter until after a decree was rendered and sale of the property had when Kaufman advised them that he had purchased the property. After receipt of a telegram from Kaufman, advising them that he had purchased the property, they still had time to challenge the validity of the sale, which they say was made without proper advertisement. They did nothing, however, to prevent a confirmation of a sale, which cured whatever alleged defect existed therein.

After this sale they had a right to proceed within the time provided by statute to set aside the alleged erroneous decree rendered on constructive service, and to correct the alleged injustice which they now claim. They failed, however, to avail themselves of this remedy as provided by statute. Section 6266, Crawford & Moses' Digest; *Owen* v. *Union Central Life Ins. Co.*, 191 Ark. 1014, 88 S. W. (2d) 1002.

This it seems ought to be sufficient in itself to prevent further inquiry into the decree, sale and confirmation.

However, taking up some of the matters alleged in the complaint, it seems conclusive that the plaintiffs, appellants here, have not been really prejudiced. There is nothing in their contention that Kaufman required them to convey the property to him by deed instead of mortgage. In his suit against them the instrument is treated as a mortgage or deed of trust and foreclosed as such.

They alleged that he practiced a fraud upon the court. This is a more nearly general conclusion than a statement of fact, and we fail to see that any fraud was practiced. No specific act has been pointed out to us, nor can such a conclusion be reached from a combination of all acts pleaded. The letter which Kaufman wrote to the appellants before the foreclosure suit was filed contains no promise or agreement that he would not foreclose or that he would permit continuous delays in payments, merely because he was collecting the rent upon the property. Whatever interpretation Wright and his wife may have put upon this matter, such conclusions as they plead were not warranted. The letter is offered as an exhibit to substantiate the allegation. Such exhibit is controlling rather than the allegation of the complaint. The letter is the foundation of the charge. *Beavers* v. *Baucum,* 33 Ark. 722; *Koons* v. *Markle,* 94 Ark. 572, 127 S. W. 959.

The alleged overcharge for taxes, or the failure to keep the money on deposit in the bank, resulting in a decree for an erroneous amount or a larger amount than was justified does not authorize the vacation or setting aside of the decree. This was a matter which might have been tried and is not now open to attack. *Estes* v. *Lucky,* 133 Ark. 97, 201 S. W. 815.

They allege that their debt was not in default at the time of the foreclosure, but that does not open a way for collateral attack upon the decree.

It seems clearly apparent that the chancellor was correct in sustaining the demurrer. The plaintiffs alleged no reason or cause whereby the decree might have been vacated.

The case of *Pugh & Co.* v. *Martin,* 164 Ark. 423, 262 S. W. 308, and *Dent* v. *Atkinson,* 191 Ark. 901, 88 S. W. (2d) 826, are controlling here.

The decree is therefore affirmed.