BRICK *v.* THE SOVEREIGN GRAND LODGE OF ACCEPTED
FREE MASONS OF THE STATE OF ARKANSAS.

4-5096

Opinion delivered June 6, 1938.

*Reinberger & Reinberger, E. D. Dupree, Jr.,* and
*Elton A. Rieves, Jr.,* for appellant.

*M. Danaher* and *Palmer Danaher,* for appellee.

MEHAFFY, J.   This action was begun by the appellee
in the Jefferson chancery court on July 19, 1937.   The
complaint alleged that on November 12, 1932, J. S. Phelix,
who was then Grand Master of the appellee lodge, falsely
pretended that the Grand Lodge was indebted to him in
the sum of $1,617, made and executed a pretended promis-
sory note wherein it was set forth that the said Grand
Lodge would pay to the said Phelix or order, on January
12, 1933, the sum of $1,617 with interest at the rate of 10
per cent. per annum from date until paid, and that at a
later date said Phelix wrongfully transferred said note
to E. Brick for the purpose of defrauding the appellee.

At the time said note was transferred by said Phelix, appellee did not owe said Phelix, but, on the contrary, said Phelix was indebted to the appellee for moneys had and received by him, and not accounted for, and also for damages which he had caused appellee to suffer by reason of his having fraudulently assisted in and connived at the bringing of a pretended suit by the State of Arkansas against appellee for the purpose of canceling its charter and having himself appointed receiver in that action in the circuit court of Crittenden county, which had no jurisdiction over appellee, and no jurisdiction of the pretended cause of action. It alleged it was damaged in the sum of more than $5,000.

The appellant, E. Brick, filed an action in the circuit court of Crittenden county upon said note against J. S. Phelix and the appellee, and recovered judgment against them jointly on November 30, 1936, for $2,110.19 with interest, etc. Said Brick has filed a certified copy of said judgment in the office of the circuit clerk of Jefferson county, and caused execution to be issued against appellee and placed in the hands of the sheriff of Jefferson county, and by him levied upon appellee's property in Pine Bluff, Jefferson county, Arkansas, and said sheriff is about to advertise said property for sale under said execution and will do so if not prevented by an order of this court.

Appellee alleges that Phelix has property in Arkansas sufficient to enable Brick to collect his judgment, but Brick has not attempted to enforce payment of said judgment against Phelix; that the judgment in the circuit court of Crittenden county was rendered without the court having acquired jurisdiction of appellee. The summons was issued in said action, having been served only upon E. U. Reed, who had no authority from appellee or of law to accept service, and upon whom the law did not provide summons to be served, Reed not being one of the officers designated by the statute upon whom summons should have been served. Neither Phelix nor Reed were ever authorized by appellee to execute in its name a promissory note or other contract for payment of money, and said note was void for that reason. Appellee states

that it is a benevolent society, not organized for profit, but solely for charitable and benevolent purposes for its members; that the property upon which said execution was levied is its temple in which it holds its meeting and transacts its benevolent purposes; that said property is exempt from execution by reason of the use to which it is put. Appellee had no knowledge, notice or information that said suit had been brought by Brick before the judgment was rendered; that the sheriff of Pulaski county who served the summons in said action erroneously recited in his return upon the summons that Reed was the agent designated for service by appellee, and that Reed was not such designated agent, and service upon him did not constitute notice to the appellee. It prayed for a temporary injunction, and upon final hearing that the injunction be made permanent, and that the judgment of Crittenden county circuit court be declared void as against appellee, and that the said E. Brick, his successors and assigns, be permanently enjoined from causing any execution or other process to be issued from any court; that said note be canceled and annulled and that Brick be required to surrender it for cancellation.

The court issued a temporary injunction and directed that appellee file bond in the sum of $3,300 conditioned as required by law. The bond was filed on the same date.

The appellant, Brick, filed separate answer denying all the allegations in appellee's complaint, and further stating that the judgment of the Crittenden circuit court was a valid judgment, and that the appellee had no meritorious defense, and that said judgment was secured after service had been had and no answer filed by the appellee. He further stated that at all times prior to the institution of the suit the appellee had promised to pay him the amount due, and repeatedly wrote him promising to pay, and never disputed the correctness of the note. He further stated that when suit was instituted after he had notified appellee of his intention to sue, a summons was issued and served upon E. U. Reed, who at that time was Grand Master of appellee, and appellee had actual notice of the pendency of the suit, and never attempted to answer and test the merits of the cause of action; that

the actual notice to E. U. Reed, who was the Grand Master, was on November 4, 1936, and judgment was not rendered until November 30, 1936.

It was stipulated as follows: "There is sufficient property in Jefferson county that is owned by the Sovereign Grand Lodge of Accepted Free Masons of the State of Arkansas which is subject to execution to pay any judgment that might be rendered in this case."

E. U. Reed testified in substance that he was and had been Grand Master of the appellee since August 30, 1933; that prior to that time he was Grand Secretary from 1923 to 1933; that at the time summons was served on him he held no office other than that of Grand Master; that A. W. Flowers, of Stamps, was secretary and D. B. Arnold, of Helena, was treasurer; witness did not remember reporting the fact that he was served with summons to any member of the lodge; he found out later that a hearing was had in the Crittenden court shortly after summons was served; he was over there in another case a few days later and did not make it known that a judgment had been rendered in the Brick case; that the note was executed by order of J. S. Phelix, but he did not remember whether there was a board meeting or whether Phelix wrote him a letter; there was no reason he should obey Phelix's orders, but he did sign the note; the Grand Lodge never passed any resolution giving him authority to sign the note; the fact of his signing the note was discussed in the lodge two years later; has attended all meetings of the Grand Lodge and is sure no resolution was passed by the lodge; witness did not know whether the lodge owed Phelix that much money or not, but he always carried out Phelix's orders, and therefore signed the note.

A letter was introduced which had been written by Reed stating there were no finances on hand to pay the claim, but if suit was delayed the Grand Lodge would probably be able to satisfy them reasonably; that he knew about the note and that the money was due, but just did not have the money. After a conference with the holder of the note he said he would like to see Phelix. The letter introduced was written June 29, 1936, and

witness said the Grand Lodge met in August, and that the matter had possibly been discussed with the Grand Lodge prior to that time; witness wrote Mr. Rieves a letter in which it was stated in substance that the writer had been trying to negotiate a loan for the payment of several obligations, but had been unable to do so; he testified that he had no other negotiations with Rieves except this note; witness said he did not find out about the judgment from the clerk's office, but was told about it by Flowers; witness was chairman of board of trustees in November, 1936; the board would pay some bills and had charge of borrowing money when it was voted by the Grand Lodge; he paid some money to Phelix in the fall of 1933 or spring of 1934, but understood it was to pay a lawyer fee; did remember sending around $100, but understood it was for a lawyer; witness and Phelix were good friends; only on one occasion had witness signed a note for the lodge and that was to pay himself some money; Phelix also signed this note and he in turn signed one for Phelix; never notified the lodge in any way that these notes were signed; witness took a note for his salary, but never did undertake to collect it; witness' note and Phelix's note were executed at the same time; witness was served with a summons in this suit; had notice of the institution of the suit, but did not remember where he was served and did not remember where he put the summons; did not tell any members of the lodge about having received the summons; when summons was served he was in charge of affairs of the lodge at Little Rock; was Grand Master and chairman of the board of trustees.

Other witnesses testified about the incorporation of the lodge and about the trustee board.

J. S. Phelix testified in substance that he was receiver in the case of the *State of Arkansas* v. *Grand Lodge;* testified to collecting funds from the members, and said they were in the nature of a trust fund, a dividend on Cities Service bonds for $2,000, a $75 check from the Grand Master to be paid attorneys, and testified about the money he received and paid out; when suit was brought in Crittenden county witness signed a waiver waiving the hearing afforded by law, and admitting the

insolvency of the lodge and agreed that suit might be brought immediately for the appointment of a receiver.

The appellant testified and introduced the following note:

"$1,617.00                    Little Rock, Arkansas, November 12, 1932. Sixty days after date, I, we or either of us promise to pay to the order of J. S. Phelix $1,617.00, for value received, negotiable and payable without defalcation or discount, at the office of J. S. Phelix, Marion, Arkansas, with interest from date at the rate of 10% per annum, and at the rate of 10% per annum from maturity until paid. The makers and endorsers of this note hereby severally waive presentment for payment, notice of nonpayment and protest.

"J. S. Phelix, G. M.

"Most Worshipful Sovereign Grand Lodge, F. & A. M.

"E. U. Reed, Secy."

Witness testified that he paid the whole amount of the note in cash; that Phelix owed him a $200 note, which he turned back to Phelix and paid the difference in cash.

Other witnesses testified, including attorneys, to the effect that the attorneys had had some correspondence about the note; and a copy of the judgment in the Crittenden county circuit court was introduced which showed that the suit was against the appellee, a corporation, and the summons was introduced showing that it was served on Reed, who was the Grand Master of the lodge at the time. There was also introduced the complaint filed in the Crittenden circuit court, and a copy of the note. We do not deem it necessary to copy these exhibits that were introduced; but it is sufficient to state that suit was filed in the circuit court of Crittenden county and service had on Reed, who held no office except that of Worshipful Master of the Grand Lodge; and the proof also shows that when Phelix was Grand Master he made and signed a note and had Reed, who was at that time secretary of the lodge, to sign the note; and that other members of the lodge knew nothing about it; it was never authorized by the lodge; that shortly after the note was made, it was transferred to the appellant and he brought this suit. After suit was brought, Reed, upon whom the summons

was served, did not notify the lodge or any of the members; and after judgment was had Reed found it out, but did not let the members of the lodge know about it for quite a while; and the chancellor found that there was no service of summons in the case of E. Brick v. J. S. Phelix and appellee in the circuit court of Crittenden county, Arkansas, the only attempted service being upon E. U. Reed, who was not one of the officers designated by statute upon whom service of summons could be made; that said Reed and Phelix conspired together in fraudulently issuing without authority from plaintiff the note upon which the judgment sought to be enjoined was based, and after the attempted service of summons in said action upon said Reed, both Reed and Phelix in furtherance of the conspiracy between them, sedulously avoided giving notice or knowledge of the pendency of said action to any member of the plaintiff Grand Lodge; and that upon said fraudulent actions of said Phelix and Reed, the plaintiff was prevented from making any defense to said action in the Crittenden circuit court.

The court further found that the note sued on was executed by said Phelix and Reed without authority; and that it was void *ab initio;* that said Phelix was indebted to the plaintiff instead of being its creditor; and that no notice of the transfer of the note by Phelix to the defendant was ever given by either of them to the plaintiff Grand Lodge until the issuance and service of the execution herein enjoined. The plaintiff had no knowledge of such transfer until then.

The evidence also shows that Phelix was Grand Master and Reed Grand Secretary; and that Reed signed the note as secretary, but knew nothing whatever about it and signed it simply because Phelix told him to; that at the same time a note was executed and signed by Phelix and Reed to Reed. This note, however, was never collected and no effort was ever made to collect it.

Appellant's first contention is that the proceeding is a collateral attack on the judgment of the circuit court of Crittenden county, and cites and relies on *Turley* v. *Owen,* 188 Ark. 1067, 69 S. W. 2d 882. In that case, this court said: "On the other hand, a collateral attack upon

a judgment has been defined to mean any proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered, or by appeal, and except suits brought to obtain decrees declaring judgments to be void *ab initio.*"

The suit in this case was brought for the very purpose of having the judgment declared void *ab initio.* It was alleged that there was no service and no notice and that Phelix and Reed conspired to prevent notice to the appellee and he was not indebted to Phelix in any sum. The case relied on, we think, is authority for the maintenance of the present suit.

He also refers to 15 R. C. L., p. 838. That section merely defines what constitutes a collateral attack upon a judgment. The section in the same volume following the section relied on by appellant defines a direct attack.

The court has repeatedly held that where the suit is brought for the purpose of obtaining a decree declaring the judgment to be void *ab initio* it is a direct and not a collateral attack. None of the cases relied on by appellant, so far as we have been able to find, hold contrary to this rule.

Appellant also calls attention to the case of *United State* v. *Throckmorton,* 98 U. S. 61, 25 L. Ed. 93; but the court said in that case: "But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff."

Many cases are cited by appellant defining collateral attack and holding that in the cases decided there was a collateral and not a direct attack. None of them, however, hold contrary to the rule announced and repeatedly followed by this court.

This court, as we have said, has repeatedly held that a proceeding to have a decree declared void upon the ground that it was entered without notice is a direct and not a collateral attack upon the decree. *Morgan* v. *Leon*, 178 Ark. 768, 12 S. W. 2d 404. We know of no cases decided by this court which hold to the contrary.

In the instant case, there was a direct attack; and the purpose of the suit was not only to restrain the sale under the execution which had been issued, but was to have the judgment of the Crittenden circuit court declared void *ab initio*.

It is next contended by appellant that the chancery court of Jefferson county has no jurisdiction to enjoin or stay proceedings on a judgment or final order of the circuit court of Crittenden county. The undisputed fact is that the execution was issued out of the circuit court of Jefferson county and not in Crittenden county. A transcript of the judgment of the Crittenden circuit court was filed with the clerk of the circuit court of Jefferson county under the statute and, therefore, became a judgment in Jefferson county.

The circuit clerk of Jefferson county issued the execution and this suit is, among other things, for restraining and preventing the sale of the property under the execution issued by the clerk of the Jefferson circuit court. The Jefferson circuit court had jurisdiction and the proper place to bring an action to restrain an execution issued out of that court was in Jefferson county.

It is contended by the appellant that the service on Reed, who was the Grand Master of the lodge, was proper service.

Section 1363 of Pope's Digest provides for service upon corporations. It is provided that the service may be had upon the president, mayor or chairman of the board of trustees, and, in case of the absence of the above officers, then it may be served upon the cashier, treasurer, secretary, clerk or agent of such corporation.

E. U. Reed, upon whom service was had, was not one of the officers named in the statute for service; and therefore, the service upon him was void, and, as the chancellor found, fraudulent, because Reed was not an officer desig-

nated by the statute; and he and Phelix had executed the notes to themselves without any authority of the lodge or any knowledge of the lodge that they had done this or intended to do so.

We, therefore, hold that the service was void and that the proceedings in the Jefferson chancery court constitute a direct attack on the judgment of the Crittenden circuit court. The decree of the chancellor on the facts is not contrary to the preponderance of the evidence. The decree is affirmed.

SMITH, J., dissents.