Alvin J. INGRAM *v.* Troy LUTHER et al

5-4331                                    424 S. W. 2d 546

Opinion delivered March 4, 1968

*Howard Mayes* and *Wils Davis,* for appellant.

*Rhine & Rhine,* for appellees.

J. Fred Jones, Justice. This appeal is from a decree of the Greene County Chancery Court setting aside a previous decree and confirming and quieting title to all that portion of Lots 4, 7 and 8 east of the St. Francis Levee in Section 32, Township 18 North, Range 8 East in Greene County, Arkansas. For conven-

ience these lots will hereafter be referred to by number except where a fuller description is necessary.

The first decree in chancery case No. 8366 was entered on December 20, 1961, and confirmed title in the appellant who was the plaintiff in that case. The second decree in chancery case No. 8881 was entered on November 7, 1966. This second decree set aside the first decree and confirmed title, in the appellees who were defendants in the first case and plaintiffs in the second case. The entire record of the trial in the first case was made a part of the record in the trial of the second case. On this appeal from the second decree, the appellant relies on the following points for reversal:

"1. The lower court should not have set aside, cancelled and held for naught the decree of the Greene County Chancery Court in Cause No. 8366 because the proof in this case is contrary to the Court's finding that no service of any kind was had on Troy Luther and Lula Mae Luther, his wife.

"2. The lower court should not have decreed that title to all that part of Lots 4, 7 and 8 lying East of the St. Francis Levee and Drainage ditch in Section 32, Township 18 North, Range 8 East, be quieted in Troy Luther and Lula Mae Luther, his wife, as against Alvin J. Ingram because such finding was contrary to law.

"3. Payment of taxes on land under color of title is deemed to be possession.

"4. Payment of taxes on unimproved land for a period of fifteen consecutive years creates presumption of color of title.

"5. Redemption of land from tax sale is not payment of taxes within the meaning of the law."

The pertinent facts in the record before us are as follows: In 1940, a Mr. Barnes who owned all of Lots 4, 5, 6, 7 and 8, sold Lots 5 and 6 and all that part of Lots 4, 7 and 8 *west* of the St. Francis Levee to a Mr. Donaldson. In 1941, Barnes sold that portion of Lots 4, 7 and 8 *east* of the levee to a Mr. Austin, and in 1954, appellees purchased Lots 4, 7 and 8 *east* of the levee from the Austin heirs.

Donaldson sold Lots 4, 7 and 8 *west* of the levee to Hudson, who in turn sold to Kent who quitclaimed to W. T. Kitchen in 1951 under description as follows: "Lots 8, 4, 5, 6 and 7 in accordance with recent survey and plat replatting lands south and east of re-established meander line and north and *west of original levee,* of Section 32, Township 18 North, Range 8 East." In 1952, W. T. Kitchen transferred by quitclaim deed this property by this same description to Kitchen Farms Company. In 1958, Kitchen Farms Company transferred to Mrs. Effie C. Kitchen under description as follows:

"Lots Four (4), Five (5), Six (6), Seven (7) and Eight (8), according to plat of new survey of 1922, and in what would be section thirty-two (32) if the lines were extended."

In 1959, Effie C. Kitchen sold to appellant, Alvin J. Ingram, under the following description: "Lots 4, 5, 6, 7 and 8 of said Section 32, according to resurvey of 1922."

In November 1959, the appellee, Troy Luther, executed an instrument in form of timber deed, but designated "Bill of Sale," conveying the timber on that portion of Lots 4, 7 and 8 east of the levee to one William Leach, and Leach proceeded to cut timber using a steel barge and other equipment in the process.

In May 1960, appellant Ingram filed a verified complaint in the Greene County Chancery Court against Troy Luther and William Leach alleging ownership in certain described lands in Greene County including

"All of Lots 1, 2, 3, 4, 5, 6, 7, 8 and 9 according to plat of new survey of 1922, and in what would be, if the section lines were extended, Section 32."

In deraigning title in his complaint, appellant recited an unbroken chain of deed conveyances from Barnes through Donaldson, Hudson, Kent, W. T. Kitchen, Kitchen Farms, and Effie C. Kitchen. The complaint then alleged that Leach had trespassed and cut timber from the lands described in the complaint under claim of timber deed from Luther, notwithstanding the fact that Leach had been advised that the land from which the timber was cut did not belong to Luther, *"and that Troy Luther only claimed that part of Lots 4, 7 and 8 east of the Old St. Francis Levee."* (Emphasis supplied).

The complaint prayed a restraining order against Leach, a judgment against Leach for $3,750.00 and an order of attachment against the barge and equipment belonging to Leach. The complaint then prayed that the court

". . . enter a decree quieting title to said Lots 4, 5, 6, 7, and 8 in this plaintiff, divesting any right, title or interest in said lots out of the defendant Troy Luther and vesting the title thereto in this plaintiff."

On June 9, 1960, amendment was filed to the complaint alleging payment of taxes for more than fifteen years. On May 27, 1960, a warning order was filed by the chancery clerk warning the defendants to appear within thirty days and answer the complaint of the plaintiff, Alvin J. Ingram.

An attorney ad litem was appointed and publication of the warning order was completed on August 10, 1960, but proof of its publication was not filed until December 20, 1961. The attorney ad litem filed his report on August 10, 1960, setting out that on July 8, 1960, he wrote a letter to Bill Leach and "copies of the same letter to Mr. Troy Luther, General Delivery, Marysville, California;" and that the copies to Luther were returned. The copy of the letter was filed with the report and the pertinent parts of the letter are as follows:

> "Suit has been filed against you in Chancery Court here in Greene County, Arkansas, by the above named plaintiff, *claiming title to certain lands in Greene County, Arkansas,* and alleging that you have jointly cut timber on said lands and damaged the plaintiff to the extent of $3,750.00, and has attached a steel barge with all equipment thereon in Greene County. The prayer of the complaint is that *title be quieted in the plaintiff to the lands described in the complaint* for judgment against *the two of you jointly* in the amount of $3,750.00, and for injunction against you enjoining you from further trespassing upon the land.
>
> "*I am enclosing a copy of the temporary restraining order* issued in this case. . ." (Emphasis supplied.)

The restraining order did not mention Lots 4, 7 and 8, but only mentioned,

> "Fractional Section 32 lying south and east of the *New* St. Francis River Levee and Lots 1, 2, 3, 5, 6 and 9 according to the plat of New Survey of 1922, and which said lots would be in Section 32 if the section line were extended, all in Township 18 North, Range 9 East, Greene County, Arkansas." (Emphasis supplied.)

On January 8, 1961, a warning order was issued warning *Lula Mae Luther* to appear within thirty days and answer the complaint. One month later, on Febru-

ary 8, 1961, Lula Mae Luther was made a party defendant, by amendment to the complaint, alleging that:

"...[T]he said Lula Mae Luther is the wife of Troy Luther *and that the deed dated November 12, 1954, recorded in Record Book 126, page 61, of the records of Greene County, Arkansas, under which the said Troy Luther claimed title,* was made jointly to the said Troy Luther and defendant Lula Mae Luther and, therefore, all of the allegations made in the original complaint against Troy Luther are equally applicable to the defendant Lula Mae Luther." (Emphasis supplied.)

The amendment then alleged that Mr. and Mrs. Luther aided and abetted Leach in cutting timber from the lands described in the original complaint and prayed judgment against Mr. and Mrs. Luther for $1,000.00 and for *attachment* against "...all of Lots 4, 7 and 8 resurvey of Section 32, in Township 18 North, Range 8 East, Greene County, Arkansas, east of the Old St. Francis River Levee."

The attorney ad litem mailed letters to Mrs. Luther c/o Emery Horner, Yuba City, California and c/o General Delivery Marysville, California (the same address he had used six months earlier for Mr. Luther). The letter mailed to Mrs. Luther imparts exactly the same information to her as the one written to Mr. Luther, including reference to enclosed copy of the temporary restraining order. The amendment to the complaint and the attachment on the land were not mentioned in the letter.

The letters mailed to the appellees were not received by them but were returned to the attorney ad litem. No answer was filed by the appellees and on December 20, 1961, hearing was had on appellant's complaint. The appellant offered proof to the effect that the land involved was wild and unimproved; that taxes

had been paid by Kent, W. T. Kitchen, Kitchen Farms, and appellant, from 1950 through 1961, and the chancellor entered a decree finding among other things,

"That the plaintiff, Alvin J. Ingram, is the owner of Lots 4, 5, 6, 7 and 8, Section 32, Township 18 North, Range 8 East, in Greene County, Arkansas; that said land is wild and unimproved; that the plaintiff and his grantors have held said land under color of title for more than seven (7) years and have continuously paid the taxes thereon during that time; that there is no adverse occupant of said land; that due *notice of the filing of this action has been given as required by law*; that Troy Luther and Lula Mae Luther, two of the above named defendants, are non-residents of the State of Arkansas, and although *having been duly served, as by law required,* came not but made default." (Emphasis supplied).

The chancellor then decreed:

"[T]hat the title to the said land, to-wit: Lots 4, 5, 6, 7 and 8, Section 32, Township 18 North, Range 8 East, Greene County, Arkansas, be and the same is hereby forever quieted and confirmed in the said Alvin J. Ingram, and any claim of defendants Troy Luther and Lula Mae Luther of any interest in said land is hereby cancelled as a cloud upon the title to said land as vested in the plaintiff, Alvin J. Ingram."

On February 6, 1963, appellees filed a complaint against appellant to set aside the original decree and to quiet their own title to:

"All that portion of Lot 4, Lot 7 and Lot 8 East of the St. Francis Levy [sic] and Drainage Ditch in Section 32, Township 18 North, Range 8 East."

The appellant filed a general denial to the complaint

and prayed that the complaint be dismissed and that he be awarded ''such general and equitable relief as to which he may be entitled.''

On November 7, 1966, after hearing evidence on the issues thus joined, the chancellor set aside the original decree and quieted title in appellees, ''for the reason no service of any kind was had on Troy Luther and Lula Mae Luther, his wife, and said decree is void and of no effect.''

Appellant obviously attempted to follow Ark. Stat. Ann. § 27-354 (Repl. 1962) in attempting service on appellees. This section provides:

''Where it appears by the affidavit of the plaintiff, filed in the clerk's office at or after the commencement of the action, that he had made diligent inquiry, and that it is his information and belief that the defendant is * * *a non-resident of this state; * * *the clerk shall make and file with the papers in the case, an order warning such defendant to appear in the action within thirty [30] days from the time of making the order.''

Ark. Stat. Ann. § 27-357 (Repl. 1962) provides as follows:

''A defendant against whom a warning order has been made and published shall, upon completion of the publication of the warning order for the four [4] weeks required by law, be deemed to have been constructively summoned upon the date of making the order.''

Something more than the mere publication of a warning order is required in subjecting a nonresident, or his interest in land, to the jurisdiction of the court under a proceeding to *quiet and confirm title*, and the case be-

fore us is an excellent example of the good reason why that is so.

The rights and procedure for quieting title to lands in Arkansas are set out in Title 34, Chapter 19 of Arkansas Statutes Annotated §§ 34-1901-1925 (Repl. 1962). Section 34-1901 provides that any person claiming to own land, may bring an action to confirm and quiet title by proceeding in the manner set out. Section 34-1902 provides for the filing of petition in the office of the chancery clerk in the county where the land is located, and for the issuance of summons.

Ark. Stat. Ann. § 34-1905 provides as follows:

"Upon the filing of such petition the clerk of the court shall publish, on the same day of each week, for four (4) weeks in some newspaper published in the county, if one there be, and if not, then in some newspaper having circulation in the county, *a notice of the filing of the petition describing the land* and the calling upon all persons who claim any interest in the land or lien thereon to appear in said court and show cause why the title of the petitioner should not be confirmed. The chancery court within proper county is hereby authorized and empowered under said notice to find apparent existing liens on said real estate to be barred by the laws of limitation or laches, and decree the cancellation of said liens and the records thereof." (Emphasis supplied.)

Section 34-1906 provides for the hearing, proof and decree "*after proof of publication of the notice aforesaid has* been filed. . ." (Emphasis supplied.)

Section 34-1909 is as follows:

"The decree in the cause *shall not bar or affect the rights* of any person who claims by, through, under or by virtue of any contract with the petition-

er, or who was an adverse occupant of the land at the time the petition was filed, *or any person who within seven [7] years preceding had paid the taxes on the land,* or a remainderman, unless such person shall have been made a defendant in the petition *and personally summoned to answer the same.* (Emphasis supplied.)

Section 34-1910 provides as follows:

"Any person may appear within three [3] years and set aside the decree if he shall offer to file a meritorious defense, and every person laboring under the disability of infancy, lunacy, idiocy, [or] married women under the disability of coverture and those claiming under them may set aside the decree at any time within [3] years after the removal of such disability."

Had appellees received everything mailed to them by the attorney ad litem, they would have only been advised that appellant had filed a suit in Greene County to quiet and confirm title to some unspecified land he owned in that county; that Leach, to whom they had sold some timber, had trespassed on the land belonging to appellant and had cut some timber therefrom; that appellees were being sued, along with Leach, for damages in trespass; and that Leach was being restrained from cutting timber from the land belonging to appellant and in which appellees had no interest and claimed none. A copy of the complaint was not mailed to appellees, but apparently for the purpose of allaying any curiosity appellees might entertain as to exactly what lands were involved, in the event they should receive the letters, the attorney ad litem enclosed a copy of the restraining order on section 32 *east* of the *new* St. Francis River levee and Lots 1, 2, 3, 5, 6 and 9. Appellees' land east of the *old* St. Francis River levee was not mentioned in the restraining order, neither was any part of Lots 4, 7 and 8 mentioned in the restraining

order or in anything else mailed to appellees. Had appellees seen the warning orders published by appellant, they would have only been informed that they had thirty days in which to answer the complaint filed against them for damages caused by Mr. Leach's trespass on land belonging to appellant and cutting timber which they did not sell to Leach, and on land never claimed by the appellees.

It would appear, from the overall record in this case, that appellant attempted to quiet title to appellees' land by alleging adverse possession through the payment of taxes in a complaint disguised as an adversary proceeding for money judgment in damage for trespass. The record indicates that an effort was made to submerge a quiet title action in a complaint for damages in trespass requiring nothing more than a thirty day warning order for service on appellees, who are out of state owners of the land involved. Instead of doing everything possible to advise appellees that a suit had been filed to quiet title in their land, the attorney ad litem appears to have made a concerted effort to avoid doing so, and he made no effort whatever to advise appellees that their title was being questioned. If the attorney ad litem knew that appellant was claiming title to the land involved, the information he mailed to appellees could only have been designed to mislead appellees as to the nature of the law suit filed against them, and to lull them into a sense of false security in the event appellees should receive the information he mailed to them. In the amendment to the complaint making Mrs. Luther a party defendant, the complaint even prayed an attachment before judgment against the very land appellant claimed to own in his original complaint.

Appellees alleged fraud on the court in that appellant concealed from the trial court the fact known to him that appellees had record title to the property and had paid the taxes thereon. A part of appellant's veri-

fied answer to the complaint in cause No. 8881 is as follows:

"In this connection defendant alleges that in the argument to the Court counsel for this defendant stated to the Court that on a part of said area claimed by plaintiff in Cause No. 8366 said parties *had on a few occasions attempted to pay taxes* on a portion of said land. . ." (Emphasis supplied.)

A few excerpts from the testimony of appellant's own attorney speaks plainly on this point:

"Q. Mr. Davis, just tell what efforts you made to locate the defendant in that law suit?

A. I was very much interested personally in this property because I represented, me and my firm, represented Mrs. Effie Kitchens who had received from the Kitchens Farm Company, for her stock, one-half interest in the Kitchens estate. She had received all of the land that is shown on Exhibit "A" that we filed here.

\* \* \*

*I handled the sales, personally,* of all of that property that Mrs. Kitchens received out of the Kitchens estate. . .Now Dr. Ingram is my son-in-law and I prevailed on him to buy this land from Mrs. Kitchens and because of the fact that he is my son-in-law and the further fact that I had gotten him to buy this land, I was vitally interested in the title. I had the abstract made and brought down to date and *I had never heard of Troy Luther until a Mr. William Leach started cutting timber over there and Dr. Ingram's tenant called me and told me.*

\* \* \*

I did know Mr. Luther was paying taxes occasionally and then letting them go and redeeming them. *I found that from the record.*

\* \* \*

I knew *from the deed from Mrs. Kitchens* that Luther was claiming it.

Q. At the time you got your deed from Mrs. Kitchens to the lots that are involved in this law suit, you were on notice that Troy Luther had been paying taxes on these particular lots for more than fifteen years?

A. *From the standpoint of the record, yes. But from the standpoint of personal knowledge, no.*

Q. You knew when you filed that law suit Troy Luther had a warranty deed and record vested title to the property in question to he and his wife?

A. *Certainly I knew it at that time.* (Emphasis supplied.)

Appellant here was his attorney's son-in-law. He is charged with the knowledge of his attorney. Appellant's attorney knew *from the deed and tax records,* that appellees had record title to the property involved and had been paying their taxes thereon for fifteen years when his suit for damages in trespass and to quiet title was filed. He was bound to have known that Kitchens Farms had no title to this land when it was deeded to Effie Kitchens—he represented Effie Kitchens at that time and personally handled the transaction whereby she acquired her deed.

If appellant did not know of appellees' title and continuous payment of taxes when the complaint was filed in case No. 8366, the quiet title portion of that law suit was not such adversary proceeding that would support a confirmation decree on constructive service on an out of state owner without notice, or notice filed, and without personal service.

If appellant did have full knowledge of appellees' record title and payment of taxes, then certainly in the

light of the misleading information mailed to appellees by the attorney ad litem, appellant's statement, through his attorney, to the trial court that appellees "had on a *few occasions attempted to pay taxes* on a portion of said land" as alleged in his verified answer, was misleading and smacks of fraud, and will not be condoned by this court on appeal, where we try equity cases de novo.

We conclude that the decree entered in case No. 8366, insofar as it confirmed appellant's title in appellees' land, was void for several reasons. It was void for the reason that the notice was not published as required by Ark. Stat. Ann. § 34-1905, supra, and as recited in the decree as having been done. The decree was void because it was rendered *before* proof of publication of the aforesaid notice had been filed. Even if the notice had been published as required by § 34-1905, supra, and the decree had been rendered after proof of the publication of notice had been filed as provided in § 34-1906, supra, still appellees' rights would not have been affected by the decree, because appellees had paid the taxes on the land, not only within seven years, but for fifteen years preceding, and they were not *personally summoned to answer* the petition in which they were made defendants, as provided in § 34-1909, supra.

Even if all the statutory requirements had been met and complied with and the first decree had been a perfectly valid decree, still under § 34-1910, supra, appellees had three years from the entry of the decree in which to appear and set aside the decree by offering to file a meritorious defense.

Appellant joined the issues by general denial in his answer. The record in the first case was consolidated with the record in the second, and for all practical purposes the separately numbered cases were consolidated at the trial of the second numbered case, and no objections were made by the appellant to this procedure.

We are of the opinion that the chancellor was correct in setting aside his original decree. We are also of the opinion that the chancellor's decree, quieting and confirming appellees' title to the property involved, is not against the preponderance of the evidence and should be affirmed.

Affirmed.

HARRIS, C. J., concurs in the result.

BROWN and BYRD, JJ., concur.

GEORGE ROSE SMITH and FOGLEMAN, JJ., dissent.

CONLEY BYRD, Justice, concurring. I concur in the result reached in the majority opinion but not for the reasons therein stated. To me, the decree in case No. 8366 in the Greene Chancery Court was void for lack of strict compliance with the constructive service statutes. Ark. Stat. Ann. § 29-404 provides:

"Before judgment is rendered against a defendant constructively summoned, and who has not appeared, it shall be necessary—

"First. An attorney be appointed at least thirty [30] days before the judgment is rendered to defend for the defendant and inform him of the action and of such other matters as may be useful to him in preparing for his defense. . . ."

The notice mailed to Mrs. Luther, c/o General Delivery, Marysville, California, by the attorney ad litem is as follows:

"Dear Mrs. Luther:

"Suit has been filed against you in Chancery Court here in Greene County, Arkansas, by the above named plaintiff, claiming title to certain lands in

Greene County, Arkansas, and alleging that you have jointly cut timber on said lands and damaged the plaintiff to the extent of $3,750.00; and has attached a steel barge with all equipment thereon in Greene County. The prayer of the complaint is that title be quieted in the plaintiff to the lands described in the complaint for judgment against the defendants jointly in the amount of $3,750.00 and for injunction against you enjoining you from further trespassing upon the land.

"My duty as attorney ad litem is to write you this letter and inform you of the existence of the said law suit; and to warn you that unless you file an answer within thirty days from the first publication of the warning order, or thirty days from the date of this letter, that judgment will be taken against you, and titles to the lands quieted in the plaintiff.

"If you desire to make a defense to this action, you should contact me or some other attorney in this area and prepare your defense.

"I am enclosing a copy of the temporary restraining order issued in this case which bears the signature of Chancellor C. M. Buck."

The letters to Mrs. Luther and Mr. Luther are identical. Neither the letter nor the temporary restraining order forwarded with it describes any portion of Lots 4, 7 and 8 in Section 32. Obviously, had the Luthers received the letters, they would not have been given enough information to employ an attorney to represent them in the quiet title phase of the litigation.

Furthermore, the mailing of the letter "c/o General Delivery, Marysville, California," is an indication to the postmaster that the addressee will call for the letter at the postoffice. The postoffice in every town has, in addition to its street addresses and postoffice box addresses, a section known as "General Delivery,"

which is usually kept in alphabetical order for those persons who are expected to call at the postoffice for their mail. The record here shows no reason why the attorney ad litem should expect Mr. and Mrs. Luther to call at the postoffice for mail addressed to General Delivery. On the contrary, the record shows that they had a street address.

We have consistently held that a strict compliance with constructive service statutes is a prerequisite to the validity of a judgment. *Missouri Pac. R. R. Co.* v. *McLendon,* 195 Ark. 204, 46 S. W. 2d 626 (1932); *Swartz* v. *Drinker,* 192 Ark. 198, 90 S. W. 2d 483 (1936); *United Equitable Ins. Co* v. *Karbar,* 243 *Ark.* 631, 421 S. W. 2d 338 (1967).

Therefore, I agree with the trial court that the constructive service as shown by this record was void, and that the decree was subject to the collateral attack.

BROWN, J., joins in concurrence.

JOHN A. FOGLEMAN, Justice. I respectfully dissent. In order to consider the case in proper perspective, I will from time to time call attention to certain premises of the majority opinion that I do not feel to be justified.

First, there are statements indicating that the first case was consolidated with the second case, without objection by the appellant. The record in the first case was offered in evidence as was appropriate in a proceeding to attack the decree therein, but there was in no sense any consolidation of the actions, or of the records.

It is clear that the original proceeding was an adversary proceeding by appellant against appellees et al, to litigate conflicting claims on the assertion that appellant's title should be quieted as the superior one.[1]

---

[1] Perhaps it might be more appropriate to say that the action was one to cancel any claim of appellees as a cloud on the title of appellant. If there is a distinction, common usage has so blurred it that it is not now regarded as having any significance.

Under these circumstances none of the statutes on the subject can in any way control or limit the power of the chancery court. See 6 Ark. Law Review 86, 103, 104, 105.

An early case settling this point was *Knauff* v. *National Cooperage & Woodenware Co.,* 87 Ark. 494, 113 S. W. 28. While the statute there provided a procedure for confirming tax titles, the identical principle was involved. Appellant in that case sought to quiet his title under a clerk's tax deed against a claim of the appellee who was paying taxes on the land in dispute. Appellee defended by demurrer on the ground that appellant had not alleged that he had paid taxes on the lands for at least two years after the expiration of the right of redemption in compliance with the statute, then Kirby's Digest §§ 661-675, now Ark. Stat. Ann. § 34-1918 to § 34-1925 (Repl. 1962). In disposing of this contention, this court said:

"* * *The vice of this contention is that it seeks to apply the requirements of the statute to adversary suits, such as this one, between parties for the purpose of litigating conflicting titles and quieting the superior one. The statute does not control in such suits, as the jurisdiction of chancery courts over such subjects is exercised independently of statute. The statute, in so far as it confers jurisdiction in such cases over which courts of equity formerly exercised jurisdiction, is to that extent merely declaratory of existing powers, and not a grant of additional powers. *Hempstead* v. *Watkins,* 6 Ark. 317, 42 Am. Dec. 696; *Boyce* v. *Grundy,* 3 Pet. 210, 7 L. Ed. 655.

The complaint alleges that the land is unoccupied by an adverse claimant and that appellee is asserting title thereto and paying taxes on the land. This states a cause of action in an adversary suit, and,

if sustained by proof, is sufficient to entitle appellant to relief. The court should, under that state of the case, grant the relief prayed for by removing the alleged cloud and quieting appellant's title. Even if appellant is not entitled under the statute to a general decree for confirmation of the tax sale, the complaint states a case for relief in this adversary suit against appellee, and it was error to sustain a demurrer to the complaint, which is at least good to the extent that it states grounds for equitable relief against appellee.''

Thus, it is crystal clear that the statutes in such cases are designed to provide a means for a general quieting of titles, or, as is sometimes said, to declare a title to be in a plaintiff as against the world. The adversary proceeding simply establishes the superiority of the title of one party as against that of the other. The doctrine that the statutes do not control was recognized and applied in *Patterson* v. *McKay*, 199 Ark. 140, 134 S. W. 2d 543. There it was asserted that the court of equity had no jurisdiction to cancel a tax sale and donation certificate because the defendant was in possession of the land in question. The defendant relied on § 1 of Act 79 of 1899 [now Ark. Stat Ann. § 34-1901 (Repl. 1962)], the same act which the majority applies to affirm the lower court. In rejecting this contention, the court, speaking through Mr. Justice Baker, said:

"* * *The defendant in this action was in possession and on account of his possession he pleaded a lack of jurisdiction in the trial court to grant any relief to the plaintiff, by first filing a motion to dismiss, which being denied, he pleaded the same fact of his possession as an answer. Appellant insists that this suit is one to quiet title and that since appellee is not in possession he may not invoke the jurisdiction of the chancery court. For the position taken the appellant insists the suit must be regard-

ed as a statutory proceeding, provided for by section 10958 et seq., Pope's Digest. This is an erroneous conception of the intent and purpose of these statutes providing for the exercise of chancery jurisdiction to quiet title to real property. A recognition that such statutes (Chapter 136, Pope's Digest) do not grant jurisdiction but only establish a statutory method of exercising a jurisdiction already existing, prior to the enactment of the statutes mentioned, will make clear and understandable many seeming inconsistencies in decisions of the courts.''

The situation is no different because the service of process is by constructive service. A state has the power to provide for adjudication of titles to real estate within its limits against non-residents who are brought into court by constructive service. *Arendt* v. *Griggs,* 134 U. S. 316, 10 S. Ct. 557, 33 L. Ed. 918.

A decree setting aside a deed and cancelling a title of a non-resident defendant summoned only by warning order is valid as an action in rem, the title being established by mere force of the decree. *McLaughlin* v. *McCrory,* 55 Ark. 442, 18 S. W. 762. The statutes relied upon to give *in rem* jurisdiction under the rule in the *Arendt* case were §§ 3953-3954, Mansfield's Digest [Rev. Stat. Ch. 23, §§ 123-124; Ark. Stat. Ann. §§ 29-126, 29-127 (Repl. 1962)].

*In Frank* v. *Frank,* 175 Ark. 285, 298 S. W. 2d 1026, it is clearly demonstrated that two different and totally unrelated functions are served by (1) service on a defendant by publication of warning order and (2) publication of notice calling upon all persons claiming any interest in the lands described to show cause why petitioner's title should not be confirmed. Even though the action to quiet title was a statutory one in that case, this court said that no jurisdiction of a named defend-

ant was acquired by publication of the notice required by statute, as there was no service upon him. According to the opinion in that case, the only way to acquire jurisdiction over named defendants is by publication of warning order for the requisite period, by appointment of an attorney ad litem at least thirty days prior to the court's action, and by the filing of a report by the attorney ad litem. This clearly demonstrates that the publication of statutory notice which would be required by the majority opinion would serve no function at all where defendants are named—even in a statutory action to quiet title.

The finding of the trial court that there was no service on appellees in the original action by appellant to quiet title is clearly erroneous. This is revealed when the record in that case is examined. A warning order was published for four weeks as required by statute. An attorney ad litem was appointed more than thirty days prior to the rendition of the decree attacked in this proceeding. He filed his report before the decree was rendered. Thus, the trial court had jurisdiction to render the original decree.

The decree attacked contains specific findings that appellees were duly served as required by law and that due notice of the filing of the action had been given as required by law. Recitals such as these are conclusive on that subject, on collateral attack, unless the record itself contradicts the finding. *Pattison* v. *Smith,* 94 Ark. 588, 127 S. W. 983; *Cassady* v. *Norris,* 118 Ark. 449, 177 S. W. 10; *Turley* v. *Owen,* 188 Ark. 1067, 69 S. W. 2d 882; *Kindrick* v. *Capps,* 196 Ark. 1169, 121 S. W. 2d 515. There is a conclusive presumption in such cases that sufficient and competent evidence was before the court to justify the findings. *McLain* v. *Duncan,* 57 Ark. 49, 20 S. W. 597; *Price* v. *Gunn,* 114 Ark. 551, 170 S. W. 247; *Matthews* v. *Williamson,* 143 Ark. 281, 220 S. W. 58.

Judgments or decrees entered upon constructive service by publication will be given the same conclusive effect and are entitled to the benefit of the same favorable presumptions in this regard as those on personal service. *Crittenden Lbr. Co.* v. *McDougal,* 101 Ark. 390, 142 S. W. 836; *Hobbs* v. *Lenon,* 191 Ark. 509, 87 S. W. 2d 6.

Appellees' complaint sought not only to cancel the decree in appellant's original action, but to quiet title to a portion of the lands in themselves and to recover judgment against appellant for the sum of $3,750.00.[2] As such, it was a collateral attack on the former decree. Ordinarily, except in cases where an attack upon a judgment is authorized by statute,[3] it is necessary, in order to constitute a direct attack, that some step be taken to impeach its validity in the action itself, such as by appeal or motion to vacate or modify. *State* v. *Wilson,* 181 Ark. 683, 27 S. W. 2d 106. In an action to have title to lands quieted or confirmed, a default decree quieting title in a defendant against plaintiff in an earlier action was held conclusive, even though erroneous, until reversed on appeal or set aside in a direct pro-

---

[2]The decree appealed from granted all this relief except for the money judgment.

[3]The only statutory authorization for an independent proceeding to vacate a judgment is contained in Ark. Stat. Ann. § 29-508 (Repl. 1962) which is § 573, Civil Code. The grounds on which such a proceeding is authorized are contained in the 4th, 5th, 6th, 7th and 8th subdivisions of Ark. Stat. Ann. § 29-506 (Repl. 1962) which is § 571, Civil Code. There is no allegation in the complaint of appellees which could be said, even remotely, to suggest a basis for vacating the decree here under the 5th, 6th, 7th or 8th subdivisions. While there is an allegation that the original decree was obtained by fraudulent and untrue representations made to the court, there was no finding that such was true by the chancellor and there was no evidence to justify such a finding. It is at least doubtful that the allegations of fraud in the pleading are proper grounds under the act because they relate to the truth or falsity of evidence on the issues made in appellant's pleading.

ceeding brought in the same action for that purpose. *Hooper* v. *Wist,* 138 Ark. 289, 211 S. W. 143.

In a case strikingly similar to the one now before us in that the complaint contained allegations of fraud in obtaining a default judgment not supported by evidence, it was held that the attack was a collateral one, not being within the purview of § 29-506, because of failure to prove the allegations as to fraud. *Turley* v. *Owen,* 188 Ark. 1067, 69 S. W. 2d 882.[4] In that opinion this court quoted with approval, and applied, definitions given in the *Hooper* case, saying:

> "In *Hooper* v. *Wist,* 138 Ark. 289, 211 S. W. 143, 145, we held: 'This brings us to a consideration of whether the present case is a direct or collateral attack on the former chancery decree. A "direct attack on a judgment" is usually defined as an attempt to reform or vacate it in a suit brought in the same action and in the same court for that purpose. On the other hand, a "collateral attack upon a judgment" has been defined to mean any proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered, or by appeal, and except suits brought to obtain decrees declaring judgments to be void ab initio. 15 R.C.L. 838, par. 311. This is the effect of our decisions in the cases above cited as well as numerous other decisions of the court.' "

See, also, *Wilder* v. *Harris,* 205 Ark. 341, 168 S. W. 2d 804, wherein the attack was made by filing a motion in the action in which the questioned judgment had been rendered.

Appellees' attack was not made in the action in which the decree they seek to have vacated was ren-

---

[4]The judgment attacked in that case did not reflect the giving of the required notice.

dered, nor was it under any statutory ground for an independent proceeding. Unless it could be said that it was brought for the purpose of having the judgment declared void ab initio for want of service on appellees (as was the case in *Brick* v. *The Sovereign Grand Lodge,* 196 Ark. 372, 117 S. W. 2d 1060) and not in a proceeding contemplating some other relief or result, it is a collateral one. *Brooks* v. *Baker,* 208 Ark. 654, 187 S. W. 2d 169. Appellees' complaint in this case does contemplate other relief. It first deraigns title in appellees. It then cites particulars in which they contend that the earlier decree is erroneous and that the errors were because of fraudulent representations on behalf of appellant. While appellees ask that the former decree be set aside and vacated, the prayer for quieting of title in appellees and for a money judgment in their favor certainly contemplates other relief.

The majority apparently justifies the attack **on** the original decree by saying that constructive service was improper. Even if the attack here can be said to be a direct one, it must fail. The finding of the trial court that there was no service on appellees in the original action by appellant to quiet title is clearly erroneous. The record reveals that an attorney ad litem was appointed for Troy Luther on July 8, 1960. Warning order made July 2, 1960, for Troy Luther, upon proper affidavit, was published four times, the first insertion having been on July 20, 1960, and the last on August 10, 1960. Although the record indicates that warning order was made for Lula Mae Luther on January 8, 1961, and that the attorney ad litem for her accepted his appointment on the same date, the amendment to the complaint by which she was made a party bears a filing endorsement of February 8, 1961. The verification of that amendment and the affidavit for warning order were dated January 20, 1961. The warning order and appointment of attorney ad litem appeared in the transcript of the original proceeding between the amendment to the complaint and an attachment bond which also bears a filing

endorsement of February 8th. It is obvious that the warning order and appointment of attorney ad litem were attached to the amendment to the complaint, in blank, at the time of filing with the clerk and that it was contemplated at the time of preparation of these instruments that they would be filed in the month of January. It is also obvious that the clerk, in issuing the warning order, and the attorney ad litem in accepting his appointment, filled in the day of the month without changing the designation of the month. The conclusion seems inescapable to me that the warning order was actually issued on February 8th and the attorney ad litem accepted his appointment on the same date. The warning order for Lula Mae Luther was published four times, the first publication having been on March 7, 1961, and the last on March 29, 1961. Report of the attorney ad litem as to Troy Luther was filed August 10, 1960, and as to Lula Mae Luther on May 8, 1961. The decree was not rendered until December 20, 1961. Thus, the requirements for constructive service were met. See Ark. Stat. Ann. §§ 27-354, 27-355, 27-357, 29-404 (Repl. 1962); *Frank* v. *Frank,* 175 Ark. 285, 298 S. W. 1026; *May* v. *National Bank of Eastern Arkansas,* 231 Ark. 588, 331 S. W. 2d 697. The failure of the attorney ad litem to correspond with the appellees does not affect the validity of the decree, although there might be a question as to his right to compensation. *Brown* v. *Early,* 63 Ky. (2 Duvall) 369 (1866); *Thomas* v. *Mahone,* 72 Ky. (9 Bush) 111 (1872).[5]

I disagree with the statement by the majority that the warning order in the case would have led the appellees to believe that they were only called upon to de-

---

[5]The first case, having been decided before our adoption of the Civil Code, is binding, since § 29-404, with insignificant amendments, is § 445 of the Code which was adopted from the Kentucky Code. The latter case is persuasive. See Crawford, Civil Code of Arkansas; *State* v. *Arkansas Brick & Mfg. Co.,* 98 Ark. 125, 135 S. W. 843; *Hanson* v. *Hodges,* 109 Ark. 479, 160 S. W. 392; *St. Louis S. W. Ry. Co.* v. *Russell,* 113 Ark. 552, 168 S. W. 1083.

fend an action for damages for timber removed and trespass on lands they never owned. The warning orders read:

"The defendants are warned to appear in this court within thirty (30) days and answer the Complaint of Plaintiff, Alvin J. Ingram."

"Defendant Lula Mae Luther, is warned to appear in this court within thirty (30) days and answer the complaint of the plaintiff, Alvin J. Ingram."

They are in proper form and do not mention any land.

The majority also suggests that the decree in the original action was void because a proof of publication of warning order bears a filing endorsement one day after the decree was rendered. A decree upon service by publication is not void merely because proof of publication was not made in the manner required by statute. *Johnson* v. *Lesser,* 76 Ark. 465, 91 S. W. 763. Where the warning order has been published, failure to make proof of publication in the manner required by statute is an irregularity only and does not affect the jurisdiction of the court. *Clay* v. *Bilby,* 72 Ark. 101, 78 S. W. 749. Service is complete when the warning order has been published, not when proof is made. Ark. Stat. Ann. § 27-357 (Repl. 1962); *Blackwell Oil & Gas Co.* v. *Maddux,* 181 Ark. 726; 27 S. W. 2d 514. There is no contention that the warning order was not published. The statute providing for a means of proof of publication [Ark. Stat. Ann. § 15-105 (Repl. 1956)] is by no means intended to make that method the sole or exclusive means of showing publication. *Allen* v. *Allen,* 126 Ark. 164, 189 S. W. 841; *Straughan* v. *Bennett,* 153 Ark. 254, 240 S. W. 30; *Mahan* v. *Wilson,* 169 Ark. 117, 273 S. W. 383. Furthermore, the fact that such proof was not filed until after the judgment is not fatal. Where proof of publication fails to show that a warning order was published the requisite number of times, an amendment cor-

recting the proof of publication after judgment is proper. In *Blackwell Oil & Gas Co.* v. *Maddux, supra,* this court said there was no reason why the amendment could not be filed after, as well as before, judgment. I find nothing incomplete or insufficient in the warning order.

The statement that the record indicates an effort to "submerge" an action to quiet title in a complaint for damages in trespass is not borne out by the record. The very first allegation in the complaint is a statement of the ownership of a large tract of land of which the portion Luther was alleged to have some interest in was only a part. This was followed by a deraignment of title to tracts of land including, but not limited to, the lands in which appellant said Luther claimed some interest. These are primary allegations for an adversary action to quiet title. The allegations as to trespass and timber cutting by Leach then follow. The prayer of the complaint clearly asks for a decree quieting title against Luther. How can this primary phase of the litigation be said to be "submerged?" I submit that the original action against Leach was incidental to the quieting of title.

Nor do I see how it can be said that the attorney ad litem attempted to conceal the true purpose of the original action from the Luthers. In this connection the letter from the attorney ad litem clearly states that "[s]uit has been filed *** by *** plaintiff claiming title to certain land in Greene County* * *" and that "[T]he prayer of the complaint is that title be quieted in the plaintiff to the lands described in the complaint * * *." Of course, appellees have never claimed they were misled by the letters. They just said they did not get them, and the report of the attorney ad litem confirms their testimony. This was a fact known to the court when the decree was rendered in the original action.

The only allegation of fraud in the complaint in the present case is that the recitals of the deraignment of

title constitute fraud and that appellant did not disclose to the court that Luther had paid taxes on the land. No proof of fraud is shown. The majority opinion seems to imply that there was some collusion between appellant and the attorney ad litem to see that the notice from the latter would not be received by the Luthers. Yet, there is no such allegation or proof. I find nothing whatever to indicate that either appellant or the attorney ad litem knew the street address of appellees. Someone showed some diligence, as indicated by a correct post office address. If there had been a deliberate attempt to prevent the Luthers from getting the letters, it seems unlikely that they would have been addressed to the proper post office. In considering this point, the majority opinion quotes some of the testimony of appellant's attorney. There is other testimony that is much more to the point which I deem necessary to quote in this opinion:

> "It was hard for me to get anything out of Leach, I tried to get Mr. Luther's address from him and all he would give me was Maryville, California. That's all I could find. Dr. Ingram had a doctor friend who lived at Cardwell and I went with him to see this doctor and later I went by myself back to see the doctor and the doctor was trying to get me those addresses. I did not know Mrs. Luther was included in it at first and I could [see] she was in the deed, included as an owner and I made her a party likewise and I did everything possible to acquaint the attorney ad litem with the true residence of these defendants."

It seems that the majority finds an alternate basis for setting aside the decree for fraud practiced upon the court. This is founded upon the premise that false pleadings were filed and false testimony was given in the original proceeding. Even if this were so, it would constitute no basis for setting aside a decree after the ex-

piration of the term at which it was rendered. The fraud which entitles a party to impeach a judgment must be fraud extrinsic of the matter tried in the case and does not consist of any false or fraudulent act or testimony, the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment. *Parker* v. *Sims*, 185 Ark. 1111, 51 S. W. 2d 517; *Pattillio* v. *Toler*, 210 Ark. 231, 196 S. W. 2d 224; *Croswell* v. *Linder*, 226 Ark. 853, 294 S. W. 2d 493. In *Alexander* v. *Alexander*, 217 Ark. 230, 229 S. W. 2d 234, I find a particularly applicable quotation from *Hendrickson* v. *Farmers' Bank & Trust Co.*, 189 Ark. 423, 73 S. W. 2d 725, 726, which is as follows:

"* * * 'The fraud for which a decree will be canceled must consist in its procurement and not merely in the original cause of action. It is not sufficient to show that the court reached its conclusion upon false or incompetent evidence or without any evidence at all, but it must be shown that some fraud or imposition was practiced upon the court in the procurement of the decree, and this must be something more than false or fraudulent acts or testimony the truth of which was, or might have been, in issue in the proceeding before the court which resulted in the decree assailed. *James* v. *Gibson*, 73 Ark. 440, 84 S. W. 485; *Johnson* v. *Johnson*, 169 Ark. 1151, 277 S. W. 535; *Boynton* v. *Ashabranner*, 75 Ark. 415, 88 S. W. 566, 1011, 91 S. W. 20.' "

There is a proper method for an attack of this sort. Appellees might have sought a new trial within two years under Ark. Stat. Ann. § 27-1907 (Repl. 1962) without even being required to show a meritorious defense and without being required to assume the burden of proof. *Owen* v. *Union Central Life Insurance Co.*, 191 Ark. 1014, 88 S. W. 2d 1002; *Wright* v. *Kaufman*,

192 Ark. 400, 91 S. W. 2d 596; *Wright* v. *Burlison*, 198 Ark. 187, 128 S. W. 2d 238.[e]

I would reverse the decree of the lower court and dismiss the action.

I am authorized to state that George Rose Smith, J., joins in this dissent.

---

[e]I am not unaware of the holding that one constructively summoned in an action to quiet title may appear within three years and have a retrial of the case upon making a cost bond and showing a meritorious defense. *Lawyer* v. *Carpenter*, 80 Ark. 411, 97 S. W. 662; *Abbott* v. *Butler*, 211 Ark. 681, 201 S. W. 2d 1001. I submit that a close examination of these cases will show that in each the original action was a statutory one, and not an adversary one under the inherent powers of equity. This is quite clear in the latter case and the implication is strong that the former also involved a statutory action. In view of the clear holdings cited herein to the effect that the statute has no application to an adversary action, I think the conclusion that these cases were brought under the statute is inescapable.